UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSIAH STIRLING, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) ) | |
| JOHN P. STURDEVANT, ROBERT F. DILIDDO, JANE/JOHN DOE BROCKTON POLICE OFFICERS 1-5, in their individual capacities, and CITY OF BROCKTON, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1. This civil rights action is brought by plaintiff, Josiah Stirling, pursuant to 28 U.S.C. §§ 1983 and 1988, the Massachusetts Civil Rights Act (M.G. L. c. 12, §§ 11H, 11I ), and other state causes of action, for damages caused as a result of the use of excessive force by police officers in the City of Brockton Police Department. Mr. Stirling suffered serious and debilitating injuries, including permanent and total blindness in his left eye, and disfigurement to his leg, after he was attacked by a police K-9 while being beaten by the defendant police officers.

### Jurisdiction and Venue

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, as well as the Massachusetts Civil Rights Act (M.G. L. c. 12, §§ 11H, 11I ), M.G.L. c. 258, § 4, and state law torts.

1

3. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343 on all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over all state law claims. Venue in the District of Massachusetts is proper under 28 U.S.C. § 1391(b).

**Parties**

4. Plaintiff Josiah Stirling was at all times relevant to this Complaint a resident of the Commonwealth of Massachusetts.

5. Defendants John P. Sturdevant (hereinafter "Sturdevant") and Robert F. Diliddo (hereinafter "Diliddo") were at all times material to this complaint employed as police officers by the Brockton Police Department. Their actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Brockton. They are sued in their individual capacity.

6. Defendants John/Jane Doe Brockton Police Officers were at all times material to this complaint employed as police officers by the Brockton Police Department, but are as yet unidentified by Plaintiff. Their actions alleged in this Complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Brockton. They are sued in their individual capacity.

7. Defendant City of Brockton is a Massachusetts municipal corporation located in Plymouth County, Commonwealth of Massachusetts, and was at all times relevant to the allegations of this Complaint, the employer of the individual police officer Defendants.

**Facts**

8. On October 30, 2018, Brockton police officers Sturdevant and Sergeant Diliddo, along with John/Jane Doe Brockton police officers, were dispatched to 41 Teele Street in Brockton, a residential area and the residence of Mr. Stirling's girlfriend.

9. Mr. Stirling's girlfriend made allegations that Mr. Stirling pushed her and grabbed her phone.

10. When police arrived they began conducting a search of the area around the home in an attempt to locate Mr. Stirling.

11. The defendant-officers were told that Mr. Stirling was not armed.

12. Sturdevant was a Brockton Police officer and handler of a Malinois-Shepherd mixed-breed police dog ("K9").

13. Diliddo, a Sergeant with the Brockton Police Department and Sturdevant's superior officer, headed its K9 Unit.

14. Once on the scene, Sturdevant and Diliddo deployed the K9, at first while it was leashed, to aid in attempting to locate Mr. Stirling.

15. At some point the defendants released the K9 from its leash to apprehend Mr. Stirling.

16. Diliddo was on scene and either ordered the release of the K9 or acquiesced to Sturdevant's decision and/or failed to prevent Sturdevant from doing so.

17. John/Jane Doe Brockton police officers were also on scene and could have intervened to prevent the release of the K9 and/or the physical assault on Mr. Stirling, but they failed to do so.

18. Mr. Stirling, who was wearing a tee shirt and pajama pants, was not informed that the police officers intended to arrest him, and he was not warned that the K9 would be released.

19. The K9 located Mr. Stirling in the backyard of a home, out of sight of the defendant-officers, and charged toward him.

20. Mr. Stirling, to avoid attack by the dog, tried to climb up a fence to escape.

21. As Mr. Stirling clung to the fence, the K9 bit repeatedly into Mr. Stirling's right calf and held on to Mr. Stirling's leg while tearing the flesh of his calf.

22. The K9 biting and holding onto Mr. Stirling's leg caused him extreme pain and panic.

23. Mr. Stirling screamed and called for help.

24. When Sturdevant finally entered the yard where Mr. Stirling was being attacked by the K9, Mr. Stirling called to him for help.

25. Instead of causing the K9 to release Mr. Stirling, Sturdevant pulled Mr. Stirling down off the fence with the dog still attached to his leg.

26. With the K9 continuing to tear into Mr. Stirling's leg, Sturdevant pushed Mr. Stirling against a garage wall and punched him with a closed fist several times, causing Mr. Stirling to fall to the ground, facedown, with the K9 still mauling his leg.

27. Sturdevant then pressed his knee into Mr. Stirling's lower back and applied pressure to the back of his neck.

28. Sturdevant placed handcuffs on Mr. Stirling as he lay on the ground. During this time, the K9 remained attached to Mr. Stirling's leg.

29. Mr. Stirling repeatedly begged Sturdevant to release the dog from his leg, but Sturdevant ignored him.

30. The K9 still biting into Mr. Stirling's leg, Sturdevant punched Mr. Stirling in the face with a closed fist near his left eye as he lay on the ground.

31. Mr. Stirling heard Sturdevant announce, presumably to his fellow officers, that he had Mr. Stirling in custody.

32. The K9 finally released his bite on Mr. Stirling's leg, and Mr. Stirling was then dragged facedown through the dirt away from the dog.

33. Sturdevant commented that the color of the dirt matched the color if Mr. Stirling's skin. Mr. Stirling is African American.

34. Mr. Stirling was pulled off the ground by officers and forced to walk on his injured leg, which was bleeding and in pain.

35. Later in the day of October 30, 2018, Sturdevant applied for and obtained a criminal complaint charging Mr. Stirling with disturbing the peace, resisting arrest, and assault and battery (for allegedly pushing his girlfriend).

36. As a result of the complaint, Mr. Stirling was held in custody.

37. On February 19, 2020, the assault and battery charge was dismissed by the court.

38. After a jury-waived bench trial held on February 19, 2020, Mr. Stirling was found not guilty of disturbing the peace and resisting arrest.

<u>Injuries</u>

39. As a direct and proximate result of the defendants' use of excessive force, Mr. Stirling suffered pain and suffering, and serious, permanent injuries including:

    a. Retinal detachment with proliferative vitreoretinopathy and traumatic cataract, leaving him permanently blind in his left eye;

    b. Mr. Stirling's eye appears cloudy to onlookers and it wanders, causing him emotional distress and embarrassment;

    c. Chronic headaches and pain in near his eye;

    d. Mr. Stirling underwent four surgeries on his left eye to attempt to repair the damage;

    e. Mr. Stirling continues to require eye surgery, and will continue to require ongoing medical care for his eye for the rest of his life.

    f.   Bite and mauling wounds to his right leg caused by the K9;

    g.   Permanent and gruesome scarring;

    h.   Severe emotional distress.

<u>City of Brockton's Unconstitutional Policies and Customs</u>

40. The City of Brockton allowed a policy or custom in the Brockton Police Department permitting its officers to use excessive force, including excessive force in the deployment of K9s.

41. The Department fails to train, supervise, and discipline its officers, and its K9s, to prevent an unconstitutional use of excessive force.

42. For example, in 2013, officers in the Brockton Police Department were found, after a bench trial, to have used excessive force against plaintiffs in <u>Barbosa et al. v. Hyland et al.</u> (Docket 1:11-cv-11997-JGD).

43. In its findings, the court determined two Brockton police officers, who were both over 200 lbs., had grabbed one of the plaintiffs, a 100-pound woman, and slammed her down, face first, onto a wooden bench, causing injuries to her face, including a black eye, and pressed down on her back while she lay prone.

44. In <u>Judith Davos-Scott v. City of Brockton et al</u>. (Docket 1:14-cv-12874-RGS), Brockton Police officers were alleged to have used excessive force against the plaintiff while she was attempting to photograph a vehicle that had crashed in her backyard in the middle of the night. A Brockton police officer forcefully grabbed her camera from her hand while a Brockton Police Sergeant came up behind her and grabbed her in a bear hug, squeezing her so hard he broke one of her ribs. The Brockton police officers then physically forced her inside her home, causing bruising about her body.

45. On information and belief, the City of Brockton made a monetary settlement for the claim described in paragraph 44 in 2015.

46. In 2015, after a police shooting of Douglas Buckley involving Sturdevant, Buckley's son became distraught and, when attempting to subdue him, one or more Brockton police officers struck him in the face, fracturing his eye socket and jaw.

47. This incident was widely reported in the media, and the Mayor of Brockton made public statements dismissing allegations that the officers used excessive force as "groundless."

48. In Christian v. City of Brockton, et al. (Docket 1:15-cv-11963-PBS), Sturdevant was alleged to have used excessive force by use of his K9 by releasing the K9 while the unarmed plaintiff was lying on the ground, and causing the K9 to bite the plaintiff numerous times about his body. The plaintiff alleged that when he tried to protect himself from the bites inflicted by Sturdevant's K9, Sturdevant struck him several times in the face.

49. On information and belief, the City of Brockton made a monetary settlement for the claim described in paragraph 48.

50. In 2014, in Mackie v. City of Brockton, et al., Sturdevant was again alleged to have used excessive force by releasing his K9 on the plaintiff after he was mistaken for a robbery suspect. After the plaintiff complied with Sturdevant's order to lie down on the ground, Sturdevant released his K9 on the plaintiff, who was bitten numerous times.

51. On information and belief, the City of Brockton made a monetary settlement for the claim described in paragraph 50.

52. Sturdevant and Diliddo, by their actions in this case, were adhering to and acting in conformance with unconstitutional policies or customs that have existed in the City of

Brockton's Police Department for many years that condone and encourage the use of excessive force, including use of excessive force by police K9s.

53. This history and pattern of unconstitutional use of excessive force by Brockton Police Department officers is well-known to the City of Brockton.

54. By failing to properly train, supervise and discipline officers who use excessive force, the City of Brockton effectively condoned and acquiesced in the use of excessive force by its officers, including the use of force against Mr. Stirling.

Compliance with G.L. c. 258, s. 4

55. On October 29, 2020, a demand letter was hand delivered to the Mayor and the City Solicitor of the City of Brockton pursuant to M.G.L. c. 258 §4.

56. Plaintiff properly performed all conditions precedent to filing an action under M.G.L. c. 258.

57. The City of Brockton did not respond to the M.G.L. c. 258 demand letter within the time period prescribed by statute.

## COUNT I
## 42 U.S.C. § 1983
### Excessive Force

58. The above paragraphs are incorporated by reference.

59. Defendants Sturdevant and Diliddo used excessive force in ordering the K9 to track, bite, and maul Mr. Stirling, and failing to order the K9 to desist from the attack after Mr. Stirling was apprehended by the dog.

60. Defendant Sturdevant used unreasonable and excessive force in striking Mr. Stirling about his body and in his face while he was unarmed, not resisting, and being mauled by the K9.

61. John /Jane Doe Brockton Police officers on scene engaged in a similar use of excessive force and/or had the duty and opportunity to intervene to stop it, but failed to do so.

62. Defendants deprived Mr. Stirling of his clearly established rights to freedom from the use of unreasonable and excessive force under the Fourth Amendment to the United States Constitution as applied under the Fourteenth Amendment.

63. As a direct and proximate result of this conduct Mr. Stirling suffered the injuries described above.

## COUNT II
## 42 U.S.C. § 1983
### Excessive Force – Supervisor Liability

64. The above paragraphs are incorporated by reference.

65. Diliddo and Jane/John Doe superior officers had a duty to control the conduct of inferior officers, and a duty and opportunity to intervene and prevent a violation of Mr. Stirling's rights, but failed to do so.

66. By failing to properly train, supervise and discipline Sturdevant, Diliddo and Jane/John Doe superior officers effectively condoned and acquiesced in the use of excessive force.

67. By failing to intervene and by permitting Sturdevant to violate Mr. Stirling's rights, and by failing to properly train, supervise and discipline Sturdevant, Diliddo and Jane/John Doe superior officers were deliberately indifferent to Mr. Stirling's well-settled constitutional right to be free from excessive and unreasonable force.

68. As a direct and proximate result of Diliddo and Jane/John Doe superior officers' conduct, Mr. Stirling suffered the injuries described above.

## COUNT III
## 42 U.S.C. Section 1983
## City of Brockton

69. The above paragraphs are incorporated herein by reference.

70. The City of Brockton allowed a policy or custom in the Brockton Police Department permitting the pervasive use of excessive force.

71. The City of Brockton allowed a policy or custom in the Brockton Police Department whereby officers use excessive force by the use of police K9s.

72. The City of Brockton's policy or custom permitting the Brockton Police Department to use excessive force is unreasonable and unconstitutional.

73. The City of Brockton's policy or custom permitting the Brockton Police Department to train and use K9s to apprehend unarmed and non-resistant suspects by biting, mauling, and seizing them is unreasonable and unconstitutional.

74. The City of Brockton's policies and customs of the Brockton Police Department were the moving force behind the conduct of Officers Sturdevant and Sergeant Diliddo.

75. The City of Brockton failed to properly train, supervise and discipline Brockton Police Department officers to prevent these unconstitutional policies and customs from manifesting in their conduct.

76. As a direct and proximate result of Defendants' actions, Mr. Stirling suffered the injuries described above.

## COUNT IV
## Violation of Massachusetts Civil Rights Act, M.G. L. c. 12, §§ 11H, 11I

77. The above paragraphs are incorporated herein by reference.

78. Mr. Stirling enjoys the rights secured to him by the Massachusetts Declaration of Rights and statutes of the Commonwealth of Massachusetts, including the right to be free from unreasonable seizures and excessive force.

79. Defendants violated Mr. Stirling's constitutional rights by threats, intimidation or coercion, including but not limited to Sturdevant and Diliddo's use of the K9 against the Mr. Stirling.

80. When Mr. Stirling attempted to surrender and ask for help, defendants, by threats, intimidation, and coercion used the police K9 against him, causing the injuries described above.

81. When Mr. Stirling complained about the use of excessive force by use of the K9, Sturdevant responded with threats, intimidation, and coercion by punching the Plaintiff about the body and in the face and causing permanent injury.

## COUNT V
## M. G. L. c. 258, § 4

82. The above paragraphs are incorporated herein by reference.

83. At the time of the incident alleged above, the defendants were acting within the scope of their employment with the City of Brockton.

84. The City of Brockton was negligent by virtue of the actions of itself and its agents and said negligence caused Mr. Stirling to sustain severe injuries.

85. The City of Brockton has a duty of care in the selection, hiring, training, supervision, and retention of its employees and agents to whom they entrust the safety of the public.

86. The City of Brockton committed a breach of their duty by negligently selecting, hiring, training, supervising, and retaining Defendant Sturdevant, Diliddo and Jane/John Doe Brockton Police Officers.

87. As a direct and proximate result of the City of Brockton's negligence, Mr. Stirling suffered injuries for which he is entitled to be compensated.

88. All of Mr. Stirling's damages are a direct and proximate result of the negligence and carelessness of the City of Brockton and the defendant-officers, for whose conduct it was responsible.

## COUNT VI
## Assault and Battery

89. The above paragraphs are incorporated herein by reference.

90. Defendants Sturdevant, Diliddo, and Jane/John Doe Brockton Police Officers, without justification, intentionally assaulted and battered the Plaintiff by releasing a K9 to track, bite, and maul him.

91. Defendant Sturdevant, without justification, punched Mr. Stirling in his body and in his face causing his retina to detach from his eye and leaving him permanently blind and disfigured.

92. As a direct and proximate result of the defendants' actions, Mr. Stirling suffered the injuries described above.

## COUNT VII
**(Intentional Infliction of Emotional Distress)**

93. The above paragraphs are incorporated herein by reference.

94. Defendants Sturdevant, Diliddo, and Jane/John Doe Brockton Police Officers released a K9 on Mr. Stirling, Defendant Sturdevant punched Mr. Stirling in the face while the K9 tore at his leg, and Jane/John Doe Brockton Police Officers dragged Mr. Stirling through the dirt.

95. Defendants Sturdevant, Diliddo, and Jane/John Doe Brockton Police Officers, through their extreme and outrageous conduct, intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of their conduct.

96. As a direct and proximate result of the Defendants' actions, Mr. Stirling suffered severe distress and the injuries described above.

## PRAYERS FOR RELIEF

WHEREFORE, Mr. Stirling requests that this Court:

1. Award compensatory damages;

3. Award the costs of this action, including reasonable attorney's fees, and;

4. Award such other further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

A jury trial is hereby demanded.

Respectfully Submitted,
JOSIAH STIRLING
By His Attorneys,

/s/ Jennifer McKinnon
Jennifer McKinnon (BBO No. 657758)
Jeffrey Wiesner (BBO No. 655814)
Wiesner McKinnon LLP
90 Canal Street
Boston, MA 02114
Tel.: (617) 303-3940
Fax: (617) 507-7976
jmckinnon@jwjmlaw.com
jwiesner@jwjmlaw.com

Date: October 28, 2020